**Tagged Opinion**



ORDERED in the Southern District of Florida on October 22, 2015.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:  Case No. 13-32120-LMI
 Chapter 11

E.C.J. INVESTMENTS, INC.,

    Debtor

_____/

MEMORANDUM OPINION AND ORDER GRANTING
UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND
OVERRULING THE DEBTOR'S OBJECTION TO CLAIM

INTRODUCTION

    This matter came before me on July 27, 2015 on the United States' Motion for Summary Judgment (ECF #146) in connection with the Objection to Claim No. 1-1 of the United States filed by the Debtor, E.C.J. Investments, Inc. ("E.C.J.") (ECF ##62, 64), and the Response filed by E.C.J. in opposition to the motion (ECF #167).

1

At issue is whether E.C.J. can claim a net operating loss that was sustained by Inmobiliara C.E.J. Playa S.A. de C.V. ("Inmobiliara"), a Mexican corporation created by certain E.C.J. members for the purpose of entering into a Mexican real estate transaction. E.C.J. seeks to carry back a net operating loss in the amount of $302,500.00 that it claims to have sustained in tax year 2007. The United States maintains that the loss was not sustained by E.C.J. but instead by Inmobiliara. For the reasons set forth more fully below, I find that E.C.J. did not sustain a loss in 2007 and is not entitled to claim the net operating loss. Summary judgment is accordingly granted in favor of the United States, and E.C.J.'s Objection to Claim 1-1 of the United States is overruled.

## JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §1334(b). This is a core proceeding within the meaning of 28 U.S.C. §157(b)(1).

## BACKGROUND

The parties have agreed to a number of factual stipulations in this case. (ECF ##155, 165). Those facts are incorporated herein by reference and are cited to the docket. There are no genuine disputes as to any material facts.

E.C.J. is a real estate for-profit corporation incorporated under the laws of the State of Florida on or about March 20, 2001 with its principal place of business located in Miami Beach, Florida. (ECF #155 at ¶1). Giedre Leskevicienne ("Leskevicienne") formed E.C.J. with her own funds. (*Id*. at ¶3). Leskevicienne owned 98 percent of the shares of the company during tax year 2007. (*Id*. at ¶5). Alon Kovorsky, a foreign citizen, owned the remaining 2 percent. (*Id*. at ¶6) (ECF #165 at ¶2). Haim Yeffet ("Yeffet") became the sole shareholder of E.C.J. in 2009, and is E.C.J.'s president. (ECF #155 at ¶7).

E.C.J. was not permitted to operate in Mexico or to be a shareholder in a Mexican company under the laws of Mexico. (ECF #155 ¶9). Consequently, Leskevicienne, along with Yeffet, and Oscar Burillo Gonzalez, a Mexican national, formed Inmobiliara. (*Id*. ¶10, ECF #147 ¶11).

Inmobiliara was incorporated under Mexican law on April 25, 2007. (*Id.* at ¶10). The company was headquartered in Playa Del Carmen, Quintana Roo, Mexico. (*Id*.). According to its articles of incorporation, Inmobiliara was incorporated according to Mexican business law, was to be governed by Mexican law and was considered of Mexican nationality "with all the legal implications attached to that nationality." (*Id.*).

Inmobiliara had a minimum or fixed capital stock with no right to removal in the amount of 50,000 Pesos, was fully subscribed and paid in cash as follows: (1) Yeffet with fifty (50) Series "B" Class One Shares, equivalent 25,000 Pesos, National Currency: (2) Leskevicienne with forty nine (49) Series "B" Class One Shares, equivalent to 24,500 Pesos, National Currency; and (3) Oscar Burillo Gonzalez with one (1) series "A" Class One Share, equivalent to 500 Pesos, National Currency. (ECF #155 ¶11).

According to Inmobiliara's Articles of Incorporation, Inmobiliara's profits were to be distributed among the shareholders as dividends, proportionately to the number of shares they represented, applied in the manner decided by shareholders. (*Id.*). Losses were to be absorbed "in the same manner as profits, and shareholders [would not have] responsibility for them for sums above the amount of their shares." (*Id.*).

On or about June 6, 2007, Inmobiliara entered into a Private Promissory Purchase and Sale Contract (the "Purchase Contract") with a Mexican company by the name of SAS ARQ S.A. C.V. ("SAS") in accordance with which Inmobiliara was to purchase real property to

3

develop a residential and commercial complex in Mexico. (ECF ##155 ¶15, 147 ¶14). In connection with the Purchase Contract, on or about June 19, 2007, $290,000.00 was transferred from Closings.Com, Inc. Trust Account No. XXXXXXXX6531 to Citibank, 11 Wall Street, New York, NY for account named: Bear Sterns Securities Corp. One Metro Center North, Brooklyn, NY 11201-3859 regarding Matias SAS/07-XXX. (ECF #165 ¶4). The wired funds were provided by E.C.J. (*Id.*). However, the Purchase Contract was not fulfilled. (ECF #155 ¶16).

The United States filed its Proof of Claim No. 1-1 in the amount of $128,149.40. E.C.J. filed its Objection asserting that its tax liability was offset by a $302,500.00 loss in 2007 that E.C.J. asserts that it sustained as a result of an abandonment of a partnership interest E.C.J. acquired in 2007 for this amount. (ECF #155 ¶23). It is undisputed that this loss relates to the failed Purchase Contract. After the conclusion of discovery the United States filed its Motion for Summary Judgment.[1]

## ANALYSIS

### A. Standard of Review

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law. The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there are no material facts in dispute, and only a

---

[1] Bankruptcy Rule of Civil Procedure 7056 allows parties in a bankruptcy case to use summary judgment in appropriate instances. Rule 7056 applies to contested matters. *See* Bankr. R. Civ. P. 9014(c). An objection to claim is a contested matter and therefore the Motion for Summary Judgment is procedurally appropriate.

purely legal question remains to be decided by the court, then granting summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 747 U.S. 242, 247-48 (1986).

### B.    Only a Taxpayer can Deduct his Own Losses

Income tax deductions are matters of legislative grace and are only allowable as provided by statute. *See, e.g., Deputy v. DuPont*, 308 U.S. 488, 493 (1940); *Bull v. United States*, 295 U.S. 247, 260 (1935); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). A taxpayer seeking a deduction from income must be able to point to an applicable statute and show that the taxpayer comes within its terms. *See Indopco, Inc. v. Commissioner,* 503 U.S. 79, 84 (1992). A taxpayer has the burden of proving its right to, and the amount of, any claimed deduction. *Id.*; *O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001); *Gatlin v. Commissioner*, 754 F.2d 921, 923-24 (11th Cir. 1985) ("Because the taxpayer is privy to the facts that substantiate a deduction, he must bear the burden of proving his right to, and amount of, a claimed deduction.").

Generally, a taxpayer can only deduct his own losses; losses are personal to the taxpayer and cannot be transferred to another. *See New Colonial Ice Co.,* 292 U.S. at 440 (noting that the statutes pertaining to the deductibility of losses "have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, *i. e.*, to treat them as personal to him and not transferable to or usable by another."). Thus, under the general rule, only Inmobiliara would be entitled to deduct a loss for the failed Purchase Contract.[2]

However, there is always an exception to the rule. The dispute between the parties requires me to consider two apparently conflicting principles of tax law. On the one hand, with

---

[2] This assumes of course that Inmobiliara could be treated as a taxpayer under the laws of the United States.

5

limited exceptions that I will address in this opinion, the law holds a taxpayer to the form of a transaction it has chosen.  Relying on this, the United States argues that Yeffet and Leskevicienne formed a foreign corporation – Inmobiliara – and E.C.J. cannot now seek to contradict Inmobiliara's existence.  On the other hand, tax cases have repeatedly held that the tax consequences of a transaction focus on substance over form, and so, E.C.J. argues, the substance of the transaction proves that it, not Inmobiliara, sustained the loss from the failed Purchase Contract.  However, in this case, whichever principle holds sway, the law does not support E.C.J.'s position.

**C.     The exceptions to the rule are not available to E.C.J.**

A court will allow an entity who is not the taxpayer who sustained the loss to take a deduction where the taxpayer is held to be the beneficial or equitable owner of the entity that sustained the loss, where the entity who sustained the loss is found to be the agent of the taxpayer or is a mere dummy corporation, or where the court looks at substance over form in determining which entity is entitled to take the loss.  Notwithstanding E.C.J.'s arguments to the contrary, none of these exceptions apply to the deduction E.C.J. seeks to claim.  This is because there is a dispositive factual distinction between every case or exception on which E.C.J. relies and this case – the ownership structure of E.C.J. and the ownership structure of Inmobiliara.  The entire foundation of E.C.J.'s argument is that E.C.J. was forced to form Inmobiliara in order to invest in a real estate project, and that, but for the requirements of Mexican law, E.C.J. would either have entered into the Purchase Contract itself, or would have been the parent company of Inmobiliara. Moreover, E.C.J. asserts, Inmobiliara had no bank account and no funds – all money was supplied by E.C.J.  These arguments might have held some sway but for the fact that the ownership structure of E.C.J. and Inmobiliara were not the same.  In 2007, E.C.J. was owned

98% by Leskevicienne; Yeffet had no ownership interest in E.C.J. Conversely, Inmobiliara was owned 49% by Leskevicienne and 50% by Mr. Yeffet.[3]

### *(i) Inmobiliara is a Separate Entity and not a dummy corporation*

A corporation is a separate taxable entity for tax purposes. *Moline Properties v. Commissioner*, 319 U.S. 436, 439 (1943). It well-settled that, for tax purposes, the business of a corporation is not the business of its stockholders or officers. *Burnet v. Clark*, 287 U.S. 410 (1932); *Dalton v. Bowers*, 287 U.S. 404 (1932). It is also well-settled that a corporation will not ordinarily be regarded as the alter ego or agent of its principal or even its sole stockholder. *DuPont*, 308 U.S. at 493-95; *Burnet,* 287 U.S. at 415. Hence, losses incurred by a corporation in connection with its trade or business are deductible by the corporation, not its shareholders. *Burnet,* 287 U.S. at 415.[4] Likewise, a shareholder is not entitled to a deduction from his individual income for his payment of corporate expenses. *DuPont*, 308 U.S. at 494.

In *New Colonial Ice*, 292 U.S. at 435, the Supreme Court considered whether a new corporation organized for the purpose of taking over the assets, business and liabilities of the old corporation, with the same stockholders and creditors, was "the taxpayer" who had sustained the loss and, hence, was entitled to carry over its' predecessor's losses as a deduction against its current income. The court rejected the new corporation's argument that it should be allowed the deduction, holding that since the shareholders had chosen to form a separate and distinct

---

[3] I am disregarding the nominal shareholders in each entity.
[4] There is an exception for Subchapter S corporations, which exception is not relevant, nor argued by the parties to be relevant, to this dispute, although there was a time when E.C.J. was the subject of a Subchapter S election.

7

corporate entity, the new and old corporations "were not identical but distinct." *Id.* at 441. Accordingly, only the predecessor corporation could have deducted the loss. *Id.*[5]

In *Moline Properties,* 319 U.S. at 436, the Supreme Court held that, except in very limited circumstances, a corporation should be regarded as a separate entity for tax purposes. In *Moline Properties*, an individual formed a wholly owned corporation to hold title to his real estate properties and assume the mortgages on those properties. *Id*. The corporation ultimately sold the property and sought to have the capital gains taxed to its sole shareholder. *Id*. The individual shareholder argued that the taxpayer corporation kept no books or records, did not have a bank account, and its expenses were paid by its sole shareholder. *Id.* The taxpayer argued that the corporate form should be ignored as fictitious and that the corporation was a mere agent for its shareholder. *Id.* The Supreme Court rejected these arguments, noting that the shareholder had formed the corporation for the legitimate purpose of holding real estate in a corporate form so that the stock could be pledged to the mortgagee as security for the loan. Most significantly, the Court rejected the shareholder's argument, one with striking parallels to that of E.C.J. in this case, that the separate entity rule should not apply to him because he "was coerced into creating petitioner and was completely subservient to the creditors." *Id*. at 440. "Whether the purpose be to gain an advantage under the law of the state of incorporation, or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." *Id.* at 438-39 (citations omitted).

---

[5] Congress subsequently enacted provisions to limit the holding of *New Colonial Ice* when a net operating loss carryover or carryback is related to corporate mergers, divisions, acquisitions and reorganizations. *See* 26 U.S.C. §§381, 382.

The degree of corporate purpose and activity requiring recognition of the corporation as a separate entity can be minimal. *See, e.g., Collins v. United States*, 514 F.2d 1282, 1283 (5th Cir. 1975) (corporation has sufficient business purpose even if only reason for its formation is to obtain interest rate usurious if made to an individual); *Tomlinson v. Miles,* 316 F.2d 710, 714 (5th Cir.1963), *cert. denied*, 375 U.S. 828 (1963) (organizing corporation to facilitate management or conveyance of property owned by group of investors constituted a sufficient business purpose); *Lane v. United States*, 535 F. Supp. 397, 401 (S.D. Miss. 1981) (forming a corporation to construct apartment complex was a business purpose).

It does not even matter if the corporation is essentially a "dummy" corporation. As the Supreme Court observed in *National Carbide Corp. v. Commissioner of Internal Revenue,* 336 U.S. 422 (1949)

> Undoubtedly the great majority of corporations owned by sole stockholders are 'dummies' in the sense that their policies and day-to-day activities are determined not as decisions of the corporation but by their owners acting individually.

336 U.S. at 433.

However, Inmobiliara was not a mere dummy corporation. Inmobiliara was set up as a separate legal entity, with appropriate documentation, in a foreign country. Inmobiliara was created for a bona fide business purpose: to purchase and develop real estate in Mexico. (ECF #167). And Inmobiliara actually engaged in a business activity relating to its purpose – at least the negotiation and execution of the Purchase Contract. (ECF #146 Ex. 20). Although setting up a Mexican corporation was not the manner in which E.C.J., Leskevicienne and Yeffet preferred to do business in Mexico, it was the vehicle through which they were able to conduct that business. Accordingly, I find that Inmobiliara was a separate entity, whose separate identity should not be disregarded and is not a mere dummy corporation.

Nor is Inmobiliara a mere sham. No party has suggested that Inmobiliara was created for an improper purpose. Indeed it is undisputed that Inmobiliara was set up to comply with applicable law, not to circumvent it.[6]

### (ii) E.C.J. is not the beneficial or equitable owner of Inmobiliara

E.C.J. argues it is entitled to claim the deduction because it is the "beneficial" or "equitable" owner of Inmobiliara. (ECF #167). In support of its position, E.C.J. argues that (1) it contributed the monies for the Purchase Contract; (2) Inmobiliara had no monies unless E.C.J. funded it; however E.C.J. was prohibited from being a shareholder of Inmobiliara or to operate as a corporation in Mexico; (3) the shareholders of Inmobiliara were required to be shareholders even though they didn't contribute any money and had no financial interest in Inmobiliara; (4) Inmobiliara had no bank account; (5) Inmobiliara had no employees or business operations other than the Purchase Contract which it could only fulfill through E.C.J. and (6) E.C.J. was not even permitted to use its initials in the formation of Inmobiliara. (*Id.*).

The cases that I have already discussed in this opinion apply equally to dismiss this argument by E.C.J. The cases upon which E.C.J. relies do not support its position or are not persuasive. For example, in *Anderson v. Commissioner*, 164 F.2d 870 (7th Cir. 1948), a case that predates *National Carbide*, the court upheld the lower court's finding that interfamily gifting of corporate stock did not override the complete control that the original individual shareholders owners continued to exercise over a long period of time, including the continued receipt of economic benefits relating to ownership. In this case, there are no facts to overcome the fact that Inmobiliara through a designated representative in Mexico, conducted its own business dealings in its own name.

---

[6] Of course, if E.C.J.'s argument were successful then Yeffet and Leskevicienne would have been entitled to take the loss, not E.C.J.

In *Kumer v. Commissioner*, 106 T.C.M. 109 (U.S.T.C. 2013), Dr. Kumer argued that he was not the beneficial owner of shares in a medical corporation in which he was a named shareholder because he had been shut out by the other shareholder. Consequently, Dr. Kumer asserted, he should not have to report the Subchapter S corporation's tax attributes (gain, loss, income, etc.) on his personal tax return. The Court held that, in order to rely on the beneficial owner test there must be "an arrangement between parties who had some agreement or understanding regarding their relationship with each other" and that Dr. Kumer "being improperly excluded from the benefits of ownership of that stock" did not mean he was not the beneficial, as well as the legal owner. Thus, that case has no bearing to the issues in this case. Here there is no agreement or understanding between Inmobiliara and E.C.J. and the fact that the two corporations had completely different ownership structures contradicts Yeffet's claim that E.C.J. was the beneficial owner of Inmobiliara[7].

Here, there was no transfer of stock between E.C.J. and Inmobiliara nor was there any transfer of property over which E.C.J. intended to retain dominion and control. The only thing that E.C.J. did was supply funds to Inmobiliara for the deposit under the Purchase Contract, and apparently, for some operating expenses. E.C.J. correctly acknowledged at oral argument that merely supplying the funding is not sufficient to support a finding of equitable or beneficial ownership. In sum, there are absolutely no facts supporting E.C.J.'s assertion of equitable or beneficial ownership in Inmobiliara.

### *(iii) No Genuine Agency Relationship Exists Between E.C.J. and Inmobiliara*

E.C.J. alternatively argues that it is entitled to the deduction because Inmobiliara was acting as its agent in Mexico. In *Moline Properties*, 319 U.S. at 440, the Supreme Court, in

---

[7] All other cases cited by E.C.J. are either equally inapplicable to the facts of this case, or pre-date *National Carbide*, or are otherwise inconsistent with the Supreme Court cases I have considered.

11

dicta, rejected the argument that a corporation acts as an agent for its shareholders in the absence of an actual agency agreement or other "usual incidents of an agency relationship." *Id*. In *National Carbide*, 336 U.S. at 427, the Supreme Court declined to recognize a written agency agreement between a corporation – Airco – and its three subsidiaries pursuant to which the three subsidiaries argued income earned by them and transmitted to Airco should be taxable only to Airco.[8] The Supreme Court held that the "agency agreement" alone was not enough to avoid tax consequences at the subsidiary level. *Id.* at 436. To show a true agency relationship, the Supreme Court wrote, the relationship must include attributes such as "[w]hether the corporation operates in the name and for the account of the principal, binds the principal, *[sic]* by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal. . . ." *Id.* at 437.

In *Commissioner of Internal Revenue v. Bollinger*, the Supreme Court once again examined the issue of agency in the context of "tax treatment of corporations, purporting to be agents for their shareholders." 485 U.S. 340, 341 (1988). In *Bollinger,* an individual conveyed real property to a wholly owned corporation as required by a lender solely for purposes of circumventing usury restrictions on a loan secured by real property. Thus, the corporation became the "nominal debtor and record titleholder" as the "corporate nominee of the true owner and borrower." *Id.* at 342. The funds were used to acquire land to construct and operate a shopping center. This structure was repeated over several years and several projects involving different individual or partnership shareholders. In each instance the borrower was a corporation but everything else was done in the name of the shareholder(s) – including all leases and contracts relating to the property. All tax returns filed by the shareholders in each instance

---

[8] The taxpayers relied on the dicta in *Moline Properties* in support of their argument.

consistently reflected the shareholders as the true owners of the properties. The shareholders insisted they were entitled to the tax consequences flowing from that ownership. The Commissioner disagreed. The Supreme Court sided with the taxpayers, holding that the *National Carbide* factors did not defeat what was, in that case, a true agency relationship, and rejected the Commissioner's argument that a corporation can almost never be a shareholder's agent.

> It seems to us that the genuineness of the agency relationship is adequately assured, and tax-avoiding manipulation adequately avoided, when the fact that the corporation is acting as agent for its shareholders with respect to a particular asset is set forth in a written agreement at the time the asset is acquired, the corporation functions as agent and not principal with respect to the asset for all purposes, and the corporation is held out as the agent and not principal in all dealings with third parties relating to the asset.

*Id.* at 349-50.

E.C.J. argues that Inmobiliara was, in fact, its agent for the same reasons E.C.J argues it was the beneficial owner of Inmobiliara. However, E.C.J.'s argument has no merit because the facts to do not meet any of the requirements of agency outlined by the Supreme Court in *Moline Properties, National Carbide* or *Bollinger*.

There is no written agreement that allowed Inmobiliara to act as an agent for E.C.J.[9] Nor is there any evidence that Inmobiliara held itself out to third parties as E.C.J.'s agent "in all dealings with third parties." Indeed, the Purchase Contract contradicts any such argument since Inmobiliara represented in the Purchase Contract that ***it*** was entering into the contract through its sole manager-shareholder Oscar Burillo Gonzales, who had sufficient powers to act on behalf of, and representation of, ***Inmobiliara***. (ECF #146, Ex. 20). Thus, Inmobiliara was not an agent of E.C.J.

---

[9] And while E.C.J. is correct that a written agreement is not always required when a court determines a taxpayer's entitlement to a deduction, under the *Bollinger* criteria, a writing is required.

### *(iv) The Substance over Form Doctrine Is Not Applicable*

Having found that Inmobiliara was a separate and distinct corporate entity from E.C.J., I will now address E.C.J.'s argument that I should disregard the form of Inmobiliara and focus on the "economic reality" that E.C.J. was the alleged real owner of Inmobiliara. (ECF #167). E.C.J. argues that it would have conducted the transaction that generated the loss in its own name but for the restrictions under the laws of Mexico prohibiting it from forming a corporation in Mexico or from being a shareholder in a Mexican company. For this reason, E.C.J. argues, the substance of the transaction should override its form.

There is no question that, in applying the tax laws, substance over form is controlling; it is a "basic maxim of tax law . . . that 'the substance of a transaction rather than the form which it is cast, ordinarily determines tax consequences.'" *Ocmulgee Fields, Inc. v. Commissioner*, 613 F.3d 1360, 1368 (11th Cir. 2010) (citations omitted). "This principle 'is no schoolboy's rule; it is the cornerstone of sound taxation.'" *Southgate Master Fund, L.L.C. v. United States*, 659 F.3d 466, 479 (5th Cir. 2011) (citations omitted). The doctrine exists to ensure that taxpayers are taxed in accordance with "the thing which the statute intended." *Kirchman v. Commissioner*, 862 F.2d 1486, 1491 (11th Cir. 1989) (citations omitted). Thus, the Internal Revenue Service can look through the form of a taxpayer's fiction to determine the legitimate tax effects of a transaction and "sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." *See Higgins v. Smith*, 308 U.S. 473, 477 (1940).

Nevertheless, generally a taxpayer may not rely on substance over form to contest tax treatment. *See Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134 (1974). This is because a taxpayer is free to choose the form of its own business to suit its own purposes. *Id*. at 149. Having done so, a taxpayer "must accept the tax consequences of his

choice, whether contemplated or not." *Id.*[10]  A taxpayer may not enjoy the benefit of some other route he might have chosen to follow but did not. *Id.* at149.  "To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.'" *Id.* (citations omitted).

Consequently, the circumstances under which a taxpayer may challenge the form of a transaction is limited; a taxpayer can challenge the form of a transaction "only by adducing proof which in an action between the parties would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." *Commissioner v. Danielson* 378 F.2d 771 (3d Cir. 1967) (en banc), *cert. denied*, 389 U.S. 858 (1967).  In *Danielson*, an agreement for the sale of a business allocated part of the purchase price to a covenant not to compete, and the remainder to stock. *Id.* at 773.  For the selling shareholders, the portion attributable to stock was taxable at capital-gains rates, but the portion attributable to the non-compete agreement was taxable at higher, ordinary-income rates. *Id*.  The buyer, on the other hand, could claim depreciation deductions for the portion of the purchase price attributable to the non-compete agreement. *Id*. at 773-74.  The sellers reported all of the proceeds as capital gain, and the Commissioner determined deficiencies in their income tax. *Id*.  The sellers argued that the amount allocated by the sales contract to the non-compete agreement was done solely as a benefit for the buyer and "had no independent basis in fact or arguable relationship with business reality," and that sustaining the Commissioner's determination would "dignify form at the expense of substance." *Id*. at 774.

---

[10] *See also Peco Foods, Inc. v. Commissioner*, 522 Fed. App'x. 840, 845 (11th Cir. 2013) (noting "where parties enter into an agreement with a clear understanding of its substance and content, they cannot be heard to say later that they overlooked possible tax consequences.").

The Third Circuit determined that permitting a party to an agreement to attack a provision for tax purposes would effectively grant "a unilateral reformation of the contract with a resulting unjust enrichment, which would encourage parties unjustifiably to risk litigation after consummation of a transaction in order to avoid the tax consequences of their agreements," and "nullify the reasonably predictable tax consequences of the agreement to the other party." *Id.* at 775.  This would "cause the Commissioner considerable problems in the collection of taxes" because he "would not be able to accept taxpayers' agreements at face value." *Id*.  The court found no unfairness in this rule "because taxpayers have it within their own control to choose in the first place whatever arrangements they care to make." *Id*.

The Eleventh Circuit Court of Appeals adopted *Danielson'*s holding in *Bradley v. United States*, 730 F.2d 718, 719-20 (11th Cir. 1984).  In *Bradley*, the Eleventh Circuit refused to allow a taxpayer to recharacterize his sale of property for a nonrecourse note as the granting of an option. *Id.* at 718.  The court held that "a party can challenge the tax consequences of his agreement as construed by the Commissioner *only by adducing proof* which in an action between the parties would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, et cetera." *Id*. at 720 (citations omitted).  Since Bradley did not provide sufficient evidence to prove his situation fell into an exception, the court would not allow him to alter the form of his sale contract. *Id.*

Here, there are no facts that would support the limited *Danielson* exception.  There is no dispute that in order to do business in Mexico, Leskevicienne and Yeffet had to create a Mexican company.  There is no dispute that E.C.J. had sold property and Leskevicienne sought to invest those funds in a new venture.  However, although Leskevicienne and Yeffet had to form a Mexican corporation, there were many ways in which the financing of Inmobiliara with funds

16

from E.C.J. could have been structured that would have provided E.C.J. or Leskevicienne with the benefits of any gains or losses. For example, E.C.J. could have lent the money to Inmobiliara, but at the hearing counsel for E.C.J. acknowledged that there was no loan intended and no documentation to evidence a loan. E.C.J. failed to present any argument in support of its position that has not already been raised by other taxpayers and rejected by the Supreme Court.

The cases upon which E.C.J. relies are not helpful. Of paramount importance is that in each case upon which E.C.J. relies the taxpayer seeking the benefit of the deduction was the shareholder of the company that sustained the loss. Thus, even if the cases were not otherwise distinguishable, they are not relevant to the undisputed facts of this case.

## CONCLUSION

While it is true that there are times when a taxpayer may claim tax attributes that, at first glance appear to belong to another, this is not one of those times. Therefore, the Motion for Summary Judgment filed by United States is granted, the Debtor's Objection to Claim with regard to the Claim 1-1 is overruled, and Claim 1-1 is ALLOWED as filed.

SO ORDERED.

# # #

Copies furnished to:
Pascale Guerrier, Esq.
Lenard H. Gorman, Esq.

Attorney Guerrier shall serve a copy of this Order upon all parties in interest and file a Certificate of Service with the Court.